## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JANE CLARK, | ) | |
| **Plaintiff,** | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | |
| | ) | |
| MCKENZIE VILLAGE, LLC, | ) | _____ |
| BIG LOTS STORES, INC., and | ) | |
| HOBBY LOBBY STORES, INC., | ) | |
| **Defendants.** | ) | |
| | ) | |

### COMPLAINT

## I.   INTRODUCTION

Plaintiff, Jane Clark, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendants to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendants' failure to design and construct the facilities to be readily accessible to and usable

by individuals with disabilities.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Southern District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Alabama.

3. Plaintiff, Jane Clark, suffered from multiple sclerosis for the past sixteen years which has since developed into chronic inflammatory demyelinating polyneuropathy which is more commonly known as ("CIDP"). As a result of her aliments, Ms. Clark almost exclusively requires a mobility chair to ambulate, although it is possible for her to stand for a very short time. Ms. Clark recently suffered a cerebrovascular accident, which is more commonly known as a "stroke", that has affected her motor and sensory functions, resulting

in the episodes of paralysis of her muscle function. The extent of Ms. Clark's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Clark is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4. Defendant, McKenzie Village, LLC, (hereinafter "McKenzie Village" and/or "McKenzie Village Shopping Center") is a limited liability company that is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief from Baldwin County property records, McKenzie Village, LLC, "owns" and "leases to" Big Lots Stores, Inc., and Hobby Lobby Stores Inc., the real property and its improvements located at 3161 S. McKenzie St., Foley, Alabama 36535, and 3165 S. McKenzie St., Foley, Alabama 36535.[1] 42 U.S.C. § 12182. The shopping center is a place of public accommodation pursuant to

---

[1] According to Baldwin County Geographical Information System ("GIS"), McKenzie Village LLC owns parcel numbers 05-61-02-09-2-001-007.005 and 05-61-02-09-2-001-007.013

42 U.S.C. § 12181(7).

5.  Defendant, Big Lots Stores, Inc. (hereinafter "Big Lots"), is a foreign corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Big Lots Stores, Inc., "operates" and "leases" from McKenzie Village LLC the establishment located at 3161 S. McKenzie St., Foley, Alabama 36535, more commonly known as Big Lots. 42 U.S.C. § 12182. The Big Lots store is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)(A). Moreover, the store provides brand name foods, home furnishings, attractive and affordable furniture, seasonal merchandise, and hundreds of everyday items priced 20 to 40 percent below most discount retailers and up to 70 percent below traditional retailers to the public, which qualifies Big Lots as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

6.  Defendant, Hobby Lobby Stores, Inc. (hereinafter "Hobby Lobby"), is a foreign corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to

create both general and specific in personam jurisdiction. Upon information and belief, Hobby Lobby Stores, Inc., "operates" and "leases" from McKenzie Village LLC the establishment located at 3165 S. McKenzie St., Foley, Alabama 36535, more commonly known as Hobby Lobby. 42 U.S.C. § 12182. The Hobby Lobby store is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)(A). Moreover, the store provides a wide range of affordable arts-and-crafts, picture frames, fabrics, floral and wedding supplies, cards and party ware, baskets, wearable art, home accents, holiday merchandise, and gifts to the public, which qualifies the Hobby Lobby store as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

7.  All events giving rise to this lawsuit occurred in the Southern District of Alabama and the Defendants are citizens thereof.

8.  Plaintiff, Jane Clark, is a resident of Foley. She enjoys going out into the public to shop, eat, and socialize. Ms. Clark regularly visits the McKenzie Village Shopping Center to shop at Big Lots and Hobby Lobby for affordable household necessities and accents, crafts, and other goods. For as long as Ms. Clark can remember, every time she

goes to McKenzie Village to shop at Big Lots and Hobby Lobby, that are the subjects of this action, it is a never-ending struggle for her to find an ADA accessible parking space. When she finally does park and manages to navigate into the Hobby Lobby store, Ms. Clark is left waiting at the front of the store because when Ms. Clark requests assistance from a Hobby Lobby employee to assist with retrieving a mobility chair, she is told to go retrieve it from the back of the store herself.[2] Ms. Clark is also forced to maneuver in all sorts of ways just to get through the shopping aisles, which are too small and are cluttered with items on the ground, making it nearly impossible for Ms. Clark to navigate. When Ms. Clark finally manages to get through the shopping aisles, if she can get down them at all, she has a difficult time reaching items on the shelves. This typically requires Ms. Clark to seek assistance from a Big Lots and/or Hobby Lobby employee. The Hobby Lobby employees have on more than one occasion told her that if she has such a hard time retrieving items, then she needs to stop coming into the stores and order everything online and have it shipped to her home. After all Ms. Clark's

---

[2] Ms. Clark has made requests for Hobby Lobby to locate the mobility chairs at the front of the store. However, Ms. Clark has been told they take up too much space and are an eye sore.

struggles, she still cannot pay for the items she intends to purchase because the credit card machines are too high. Ms. Clark is forced to hand her card to the employees to swipe for her, and then is forced to tell the employees her Personal Identification Number ("PIN") to enter for her since she is unable to independently transact business at the credit card machine. Telling the PIN number out loud defeats the privacy scheme built into secured debit/credit cards. Despite the utter embarrassment Ms. Clark personally experiences when she seeks assistance from Big Lots and Hobby Lobby employees to retrieve items, and instead is told by the employees that if she cannot retrieve items independently, she needs to stop coming into the store and shop online, or feeling uncomfortable as she watches the able-bodied type in their PIN number to pay for their purchases independently and privately as she is forced to give her PIN number to an employee since she cannot use the credit card machine, Ms. Clark intends to continue going to Big Lots located in the McKenzie Village Shopping center for their surprises in every aisle that consist of a wide range of everyday consumables, housewares, toys, and seasonal goods at amazing values that other stores cannot match, and Hobby Lobby located in the McKenzie Village Shopping Center for their wide range

of affordable arts-and-crafts, hobbies, picture frames, fabrics, floral and wedding supplies, cards and party ware, baskets, wearable art, home accents, holiday merchandise, and gifts. Ms. Clark will return not only to shop at Big Lots and Hobby Lobby, but also to confirm compliance with the ADA by the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center. Ms. Clark really wants these stores fixed and will check on them until they are; then when they are fixed, she will continue going there to shop and because the stores have finally done what they are supposed to. Ms. Clark does not know exactly when she will go back to Big Lots and Hobby Lobby located in the McKenzie Village Shopping Center, because she has not planned out every shopping trip for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Nevertheless, Ms. Clark definitely intends to return to McKenzie Village to shop at Big Lots and Hobby Lobby over and over again in

the near future.

9. Because of the barriers described below in paragraph 21 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendants' premises on the basis of her disabilities.

10. Plaintiff accordingly, has Article III standing to pursue this case because (1) she is disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' shopping center and its stores are places of public accommodation, pursuant to the statutory and regulatory definition; (3) she has suffered a concrete and particularized injury by being denied access to the shopping center and its stores by architectural barriers, by being denied access by the Defendants' practices described throughout this Complaint, and by Defendants' denial of the use of the shopping center and its Big Lots and Hobby Lobby stores for her full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in paragraph 19.

## II.   PLAINTIFF'S CLAIMS

### ADA, Title III

11. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

12. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' shopping center is a place of public accommodation in that the Big Lots store provides surprises in every aisle that consist of a wide range of everyday consumables, housewares, toys, and seasonal goods at amazing values that other stores cannot match, and that the Hobby Lobby store provides a wide range of affordable arts-and-crafts, hobbies, picture frames, fabrics, floral and wedding supplies, cards and party ware, baskets, wearable art, home accents, holiday merchandise, and gifts to the public. Accordingly, it is covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*
### *(All Defendants)*

### Defendants' Existing Facilities Are Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in This Complaint

13. Plaintiff is informed and believes based on publicly available information that McKenzie Village Shopping Center in which the Big Lots and Hobby Lobby stores are located at 3161 S. McKenzie St., Foley, Alabama 36535 and 3165 S. McKenzie St., Foley, Alabama 36535 were originally constructed and opened for business in 2014 with alterations and/or improvements made thereafter.

14. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs.* 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new

construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.   42 U.S.C.  § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

15. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards

if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly

constructed or altered facilities or elements covered by §§ 36.401 or
36.402 that were constructed or altered before March 15, 2012 and
that do not comply with the 1991 Standards shall, on or after March
15, 2012, be made accessible in accordance with the 2010 Standards."

16.   For the architectural barriers at issue in this case, the 2010 Standards
for Accessible Design are applicable.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

17.   The Defendants have discriminated, and continue to discriminate,
against Plaintiff, and others who are similarly situated, by denying
full and equal access to, and full and equal enjoyment of goods,
services, facilities, privileges, advantages and/or accommodations at
Defendants' shopping center and its stores in derogation of 42 U.S.C.
§ 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As
"new construction", the buildings must be readily accessible to and
usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).
Defendants' failure to remove the existing barriers thus violates 42
U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural
barriers.

18. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' facilities. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facilities in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

19. Plaintiff has definite plans to return to McKenzie Village Shopping Center in the future, as described in paragraph 8. Plaintiff will return to the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center within the next few months not only to shop and enjoy Big Lots' surprises in every aisle that consist of a wide range of everyday consumables, housewares, toys, and seasonal goods at amazing values that other stores cannot match, and Hobby Lobby's wide range of affordable arts-and-crafts, hobbies, picture frames, fabrics, floral and wedding supplies, cards and party ware, baskets, wearable art, home accents, holiday merchandise, but also to see if the facilities have repaired the barriers, and changed their practices and procedures. Even when Defendants' facilities are repaired, Plaintiff

will continue to go there to shop. She certainly does not want to stop going to the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center when the facilities are repaired and their practices are modified; that is all the more reason to go. Absent remedial action by Defendants, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendants on the basis of her disabilities. The Eleventh Circuit, held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied *"there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store."* Due to the definiteness of Plaintiff's future plans to continue visiting the subject facilities, there exists a genuine threat of imminent future injury.

## Architectural Barriers

20. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

21. Plaintiff has been from the parking lot to the entrances, from the Big Lots store entrance to and throughout the shopping aisles; to the check-out service counters, to the restroom, throughout circulation paths, accessible routes, service areas, and paths of travel; and from the Hobby Lobby store entrance to and throughout the shopping aisles; to the check-out service counters, to the restroom, throughout circulation paths, accessible routes, service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendants' facilities located at 3161 S. McKenzie St., Foley, Alabama 36535, more commonly known as "McKenzie Village Shopping Center", "Big Lots", and "Hobby Lobby" violate the ADA in particular but not limited to:

**PARKING LOT**

a) McKenzie Village Shopping Center provides a parking lot for able-bodied individuals, but fails to provide a parking lot for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

   (1) The parking spaces serving the Big Lots store fail to conform to the ADA Standards for Accessible Design;

i. There is no designated ADA "van accessible" parking space and its adjacent access aisle;

ii. The purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

iii. The purported ADA "van accessible" parking space is located farthest from the entrance;

iv. The purported ADA accessible parking space nearest the entrance fails to meet the minimum required width of 96 inches;

v. The access aisle serving the two parking spaces nearest the entrance fails to meet the minimum required width of 60 inches;

vi. There are no ADA accessible parking spaces with their adjacent access aisles that connect to an accessible route to an accessible entrance;

vii. McKenzie Village Shopping Center fails to maintain its parking spaces serving the Big Lots store so that they are readily accessible to and usable by individuals with disabilities;

(2)  The parking spaces serving the Hobby Lobby store fail to conform to the ADA Standards for Accessible Design;

    i.  The purported ADA accessible parking space nearest the entrance fails to meet the minimum required width of 96 inches;

    ii.  There is no designated ADA "van accessible" parking space and its adjacent access aisle;

    iii.  The purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

    iv.  The purported ADA "van accessible" parking space is located farthest from the entrance;

    v.  The signage indicating the purported ADA "van accessible" parking space as ADA accessible fails to meet the minimum required height of 60 inches above the finished ground surface;

    vi.  There are no ADA accessible parking spaces with their adjacent access aisles that connect to an accessible route to an accessible entrance;

vii. McKenzie Village Shopping Center fails to maintain its parking spaces serving the Hobby Lobby store so that they are readily accessible to and usable by individuals with disabilities;

b) McKenzie Village Shopping Center provides an accessible route from the parking lot for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

(1) The accessible route serving the Big Lots store fails to conform to the ADA Standards for Accessible Design;

i. The curb ramps on the purported accessible route from the non-compliant ADA parking spaces towards the entrance have running slopes that exceed the required slope of 1:12;

ii. The curb ramp's left side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

iii. The curb ramp's right side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

iv. The curb ramp landing on the purported accessible route from the non-accessible site arrival point towards the entrance has a slope that fails to be level;

v. There is no site arrival point serving Big Lots that conforms to the ADA Standards for Accessible Design;

vi. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

vii. There is no ADA route leading from the parking lot to the entrance;

viii. McKenzie Village Shopping Center fails to maintain the accessible route to the entrance of the Big Lots store so that it is readily accessible to and usable by individuals with disabilities;

(2) The accessible route serving the Hobby Lobby store fails to conform to the ADA Standards for Accessible Design;

    i. The left-side curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a running slope that exceeds the required slope of 1:12;

    ii. The left-side curb ramp's left side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

    iii. The left-side curb ramp's right side flare on the purported accessible route from the non-accessible

site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

iv. The left-side curb ramp's landing on the purported accessible route from the non-accessible site arrival point towards the entrance has a slope that fails to be level;

v. There is no site arrival point serving Hobby Lobby that conforms to the ADA Standards for Accessible Design;

vi. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

vii. There is no ADA route leading from the parking lot to the entrance;

viii. The right-side curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a cross slope that exceeds the required slope of 1:48;

ix. The right-side curb ramp's left side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

x. The right-side curb ramp's landing on the purported accessible route from the non-accessible site arrival point towards the entrance has a slope that fails to be level;

xi. McKenzie Village Shopping Center fails to maintain the accessible route to the entrance of the Hobby Lobby store so that it is readily accessible to and usable by individuals with disabilities;

**BIG LOTS**

c) Big Lots provides check-out service counters at the front of the store for able-bodied individuals, but fails to afford non-able-

bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

    **A.** The existing check-out counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

        **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

        **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**B.** There is no ADA accessible portion of the check-out counters that extends the same depth as the non-accessible portion of the check-out counter;

**C.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**D.** Big Lots provides a point of sale machine to transact business at the check-out counters for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counters;

E.  The current practice at Big Lots is to place merchandise within the required clear counter surface;

F.  Big Lots fails to maintain the accessible features at the sales/service counters that are required to be readily accessible to and usable by individuals with disabilities;

d)  Big Lots provides a check-out service counter in the furniture section the store for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

A.  The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

i.  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

B. There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

C. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum

above the finished floor that allows for the required knee and toe clearance;

D. Big Lots provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

E. The current practice at Big Lots is to place merchandise within the required clear counter surface;

F. Big Lots fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

e) Big Lots provides an accessible route to and throughout the shopping aisles throughout the store for able-bodied individuals, but fails to provide an ADA accessible route to and throughout the shopping retail aisles for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Hobby Lobby store:

i. The floor mats at the doors to enter and/or exit the Big Lots store are not stable, firm, or otherwise secure to the floor or ground;

ii. Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the purported accessible route;

iii. The current practice at Big Lots is to maintain merchandise that is for sale to the public within the required clear floor or ground space on the purported accessible route;

iv. The current practice at Big Lots is to maintain their ladders within the required clear floor or ground space on the purported accessible route throughout the store;

v. Big Lots fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

      **vi.** Big Lots has ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

      **vii.** Big Lots fails to maintain the accessible features of the purported accessible route so that it is readily accessible to and usable by individuals with disabilities;

**f)** Big Lots provides overhead directional signage informing and directing able-bodied individuals to the restroom, but fails to provide overhead directional signage with the International Symbol of Accessibility informing and directing non-able-bodied individuals to an ADA accessible restroom;

**g)** Big Lots provides a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

i. There are not door pulls located on both sides of the toilet compartment door;

ii. The toilet compartment fails to meet the minimum required width of 60 inches;

iii. The side wall grab bar exceeds the maximum allowed height of 36 inches above the finished floor;

iv. The rear wall grab bar exceeds the maximum allowed height of 36 inches above the finished floor;

v. The baby changing table's highest operable part exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

vi. Big Lots fails to maintain the accessible features of the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

h) Big Lots provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.** The bottom reflecting surface of the mirror exceeds the maximum allowed height of 40 inches above the finished floor;

    **ii.** Big Lots fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

**i)** Big Lots provides drinking fountains outside the restrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.** Big Lots fails to meet the required level of ADA accessibility by providing at least one drinking fountain that complies with the ADA Standards for Accessible Design;

    **ii.** There is not at least one drinking fountain that provides the clear floor space centered on the unit for a forward approach with the required knee and toe clearance;

    **iii.** There is not at least one drinking fountain that provides a spout outlet that measures 36 inches maximum above the finished floor;

    **iv.** There is not at least one drinking fountain that provides a spout 15 inches minimum from the vertical support and 5 inches maximum from the front edge of the unit;

    **v.** There is not at least one drinking fountain that provides a spout with a water flow of 4 inches high minimum and located 5 inches maximum from the front of the unit;

## HOBBY LOBBY

**j)** Hobby Lobby provides check-out service counters at the front of the store for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

    **A.** The existing check-out counters fail to provide a minimum of 30 inches of clear counter surface for

individuals with disabilities to be able to make a forward approach to the counters;

    **i.**    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.**    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**B.**  There is no ADA accessible portion of the check-out counters that extends the same depth as the non-accessible portion of the sales/service counters;

C. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

D. Hobby Lobby provides a point of sale machine to transact business at the check-out counters for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counters;

E. Hobby Lobby fails to maintain the accessible features at the check-out counters that are required to be readily accessible to and usable by individuals with disabilities;

k) Hobby Lobby provides an accessible check-out service counter at the front of the store, but fails to ensure the counter conforms to the ADA Standards for Accessible Design, which includes but is not limited to the following failures of Defendants:

A. The existing purported accessible check-out counter fail to provide a minimum of 30 inches of clear counter

surface for individuals with disabilities to be able to make a forward approach to the counter;

    i.    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii.    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii.    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**B.** There is no ADA accessible portion of the purported accessible check-out counter that extends the same

depth as the non-accessible portion of the sales/service counter;

C. The current practice at Hobby Lobby is to maintain merchandise within the required clear counter surface of the purported accessible counter;

D. The current practice at Hobby Lobby is to maintain a shopping cart within the required clear floor space at the end of the purported accessible counter;

E. Hobby Lobby fails to maintain the accessible features at the purported accessible check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

l) Hobby Lobby provides a refund/exchange service counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

A. The refund/exchange counter fails to provide a minimum of 36 inches of clear counter surface for

individuals with disabilities to be able to make a parallel approach to the counter;

   i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

   ii.  There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

   i.   There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

   ii.  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

iii.  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C.  There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

D.  There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E.  Hobby Lobby provides a point of sale machine to transact business at the refund/exchange counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by

providing a point of sale machine at an accessible portion of the counter;

F. Hobby Lobby fails to maintain the accessible features at the refund/exchange counter that are required to be readily accessible to and usable by individuals with disabilities;

m) Hobby Lobby provides framing service counters in the picture framing section of the store for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

A. The framing service counters fail to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counters;

i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

      ii.    There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.**  The existing sales/service counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

      i.    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      ii.    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      iii.    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter

surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the sales/service counters that extends the same depth as the non-accessible portion of the sales/service counters;

**D.** The current practice at Hobby Lobby is to maintain merchandise that is for sale to the public within the required clear counter surface;

**E.** The floor mats at the framing counters are not stable, firm, or otherwise secure to the floor or ground;

**F.** Hobby Lobby fails to maintain the accessible features at the framing service counters that are required to be readily accessible to and usable by individuals with disabilities;

**n)** Hobby Lobby provides fabric service counters in the fabric section of the store for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or

accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

A. The existing service counters fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

    i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36

inches above the finished floor positioned for a forward approach;

B. There is no ADA accessible portion of the sales/service counters that extends the same depth as the non-accessible portion of the sales/service counters;

C. The current practice at Hobby Lobby is to maintain merchandise that is for sale to the public within the required clear counter surface;

D. The floor mats at the fabric counters are not stable, firm, or otherwise secure to the floor or ground;

E. Hobby Lobby fails to maintain the accessible features at the fabric service counters that are required to be readily accessible to and usable by individuals with disabilities;

o) Hobby Lobby provides a floral service counter in the floral section of the store for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to

individuals without disabilities, including but not limited to the following elements:

A. The existing service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36

inches above the finished floor positioned for a forward approach;

B. There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

C. Hobby Lobby fails to maintain the accessible features at the floral service counter that are required to be readily accessible to and usable by individuals with disabilities;

p) Hobby Lobby provides self-service work stations in the fabric section of the store for individuals to sit down and look at different options of fabrics and styles in the fabric books to plan out their personalized projects, but fails to provide that same level of service to disabled individuals;

q) Hobby Lobby provides self-service work stations in the fabric section of the store for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

    i. The work stations fail to provide the required clear floor space for a forward approach;

    ii. There is no ADA accessible self-service work station provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

    iii. The self-service work stations fail to provide the required knee clearance for a disabled individual to approach the work stations;

    iv. The self-service work stations fail to provide the required toe clearance for a disabled individual to approach the work stations;

    v. Hobby Lobby fails to provide at least five percent (5%) ADA accessible seating at the self-service work stations;

    vi. Hobby Lobby fails to maintain the accessible features of the self-service work stations that are required to be readily accessible to and usable by individuals with disabilities;

**r)** Hobby Lobby provides an accessible route to and throughout the shopping aisles throughout the store for able-bodied individuals,

but fails to provide an ADA accessible route to and throughout the shopping retail aisles for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Hobby Lobby store:

    **i.** The floor mats at the doors to enter and/or exit the Hobby Lobby store and throughout the store are not stable, firm, or otherwise secure to the floor or ground;

    **ii.** Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the purported accessible route;

    **iii.** The current practice at Hobby Lobby is to maintain their shopping carts within the required clear floor or ground space on the purported accessible route throughout the store;

    **iv.** Hobby Lobby fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the store shopping

aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

v. Hobby Lobby has ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

vi. Hobby Lobby fails to maintain the accessible features of the purported accessible route so that it is readily accessible to and usable by individuals with disabilities;

s) Hobby Lobby provides overhead directional signage informing and directing able-bodied individuals to the restroom, but fails to provide overhead directional signage with the International Symbol of Accessibility informing and directing non-able-bodied individuals to an ADA accessible restroom;

t) Hobby Lobby provides a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service,

facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    i. The toilet compartment fails to meet the required width of 60 inches;

    ii. The rear wall grab bar fails to extend the required distance of 36 inches;

    iii. The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

    iv. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

    v. Hobby Lobby fails to maintain the accessible features of the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

u) Hobby Lobby provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping

experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.** The lavatory sink's drain pipes fail to be properly insulated;

    **ii.** Hobby Lobby fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

**v)** Hobby Lobby provides drinking fountains outside the restrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.** Hobby Lobby fails to meet the required level of ADA accessibility by providing at least one drinking fountain that complies with the ADA Standards for Accessible Design;

ii. There is not at least one drinking fountain that provides the clear floor space centered on the unit for a forward approach with the required knee and toe clearance;

iii. There is not at least one drinking fountain that provides a spout outlet that measures 36 inches maximum above the finished floor;

iv. There is not at least one drinking fountain that provides a spout 15 inches minimum from the vertical support and 5 inches maximum from the front edge of the unit;

v. There is not at least one drinking fountain that provides a spout with a water flow of 4 inches high minimum and located 5 inches maximum from the front of the unit.

22. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

23. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

24. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facilities to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facilities until the requisite modifications are completed, and to further order the Defendants to modify their policies, practices, and procedures, to provide equal use of their facilities, services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*
### *(All Defendants)*

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

25. Plaintiff re-alleges paragraphs 1-24 above.

26. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

27. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate"

benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

28. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary

qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

29. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

30. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No.

485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

31. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in Rendon v. Valleycrest Prod., Ltd. 294 F.3d 1279, (11th Cir. 2002) that:

> "A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical

*and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges.*

## Defendants' Failed Practices and Lack of Policies Are Discriminatory

32.  Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> *"a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."*

33.  Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

34.  As detailed below, Defendants have failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted

mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have discriminated against Plaintiff. Defendants will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

35. Defendants either have no policies, practices, and procedures to remove architectural barriers or else they do not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

36. Defendants' use of its shopping center, and its practices at the Big Lots and Hobby Lobby stores located at 3161 S. McKenzie St., Foley, Alabama 36535, and 3165 S. McKenzie St., Foley, Alabama 36535 literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the facilities. Those practices include but are not

limited to the following:

   **a)** Defendant, McKenzie Village, LLC, makes its shopping center inaccessible for use by the disabled, and Defendants, Hobby Lobby Stores, Inc., and Big Lots Stores, Inc., make their premises they rent inaccessible for use by the disabled by failing to have any policies, practices, or procedures that ensures when disabled individuals make requests for accommodations, Defendants and their employees reasonably accommodate Ms. Clark and others similarly situated so that they are afforded the same opportunity to use the Defendants' facilities in the same manner as individuals without disabilities;

   **b)** Defendant McKenzie Village, LLC, makes its shopping center inaccessible for use by the disabled by failing to have any policies, practices, or procedures on ensuring that its tenants facilities are maintained to compliance with ADA, title III, which means that Ms. Clark cannot use the facilities in the same manner as individuals without disabilities that use the shopping center;

c) Defendants make their facilities inaccessible for use by the disabled by failing to have any practices that educate and train employees on making reasonable accommodations to disabled individuals, which means Ms. Clark is treated differently and outright discriminated against by Defendants and their employees, whereas, non-disabled individuals do not have that same experience because non-disabled individuals are able to use the facilities without accommodations;

d) Defendants fail to provide ADA accessible parking with connecting accessible routes to the establishment from the parking lot, which means that Plaintiff is forced to struggle to park and maneuver into the Big Lots and Hobby Lobby stores, whereas the non-disabled conveniently park anywhere in the parking lot to access the facilities;

e) Defendants' failure to provide ADA accessible parking with connecting accessible routes to the establishment from the parking results in Ms. Clark not being able to obtain an accessible parking spot, therefore being forced to park on the opposite side of the building where there is no accessible

parking whatsoever, whereas the non-disabled conveniently park anywhere in the parking lot to access the facilities;

f) Defendants make their check-out counters inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Ms. Clark cannot fully and equally use the counters to transact business in the way the non-disabled do, because the non-disabled have counters they can use to independently transact business and discuss services with employees at the counters;

g) Defendant, Hobby Lobby Stores, Inc., claims to provide an ADA accessible check-out counter in the Hobby Lobby store, but makes its purported accessible counter inaccessible for use by the disabled by maintaining merchandise within the required clear counter surface at the purported accessible counter, which means Ms. Clark cannot fully and equally use the counters to transact business in the way the non-disabled do, because the non-disabled have counters that are not obstructed with merchandise that they can use to transact business at;

**h)** Defendant, Hobby Lobby Stores, Inc., claims to provide an ADA accessible check-out counter in the Hobby Lobby store, but makes its purported accessible counter inaccessible for use by the disabled by maintaining a shopping cart within the required clear floor space at the purported accessible counter, so that Ms. Clark is forced to struggle and maneuver in many ways in order to get around the cart to leave the store after purchasing her items, if she is able to do so at all, whereas the non-disabled are able to leave the store freely and without struggle after making their purchases;

**i)** Point of sale machines at the check-out counters are located so as to be inaccessible, which means that Ms. Clark is forced to hand her card to an employee to swipe for her, and then forced to give her PIN number to an employee to type in for her, which denies Ms. Clark the ability to equally use the point of sale machines as the non-disabled, who can independently use the machines to pay for their purchases, though she cannot;

**j)** Defendants fail to provide Ms. Clark the same level of privacy as able-bodied individuals by locating point of sale machines

at the check-out counters at an inaccessible height, so that Ms. Clark is forced to hand her card to an employee to swipe for her, and then is forced to give her PIN number to an employee to type in for her, all of which the non-disabled are able to independently and privately do, though Ms. Clark cannot;

k) Defendant, Hobby Lobby Stores, Inc., make its work stations in the Hobby Lobby store inaccessible for use by the disabled by failing to provide the required clear floor space at the work stations, which means Ms. Clark cannot fully and equally use the work stations to sit down and plan out her personalized projects in the way the non-disabled do, because the non-disabled have work stations they can use to independently sit down and plan out their personalized projects;

l) Defendants fail to provide an accessible route to and throughout the shopping aisles in the Big Lots and Hobby Lobby stores, which means that Ms. Clark is forced to struggle and maneuver in every way possible in order to travel and move throughout the shopping aisles, if she can travel and move throughout them at all. Accordingly, she cannot fully and equally use the Big Lots and Hobby Lobby stores as the

non-disabled can;

m) Defendants make their restrooms inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restroom, so that Ms. Clark is not afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restroom;

n) Defendants fail to provide overhead directional signage displaying the International Symbol of Accessibility and informing and directing disabled individuals to an ADA accessible restroom, which means that Big Lots and Hobby Lobby do not even claim to have ADA accessible restrooms and that Ms. Clark has to use trial and error to decide if she can use the restrooms at all, unlike the non-disabled who can freely use the restrooms in the facilities;

o) Defendants render the counter surfaces inaccessible by selling merchandise from the area of the counters that are supposed to be the accessible counter surface;

p) Defendants make their drinking fountains inaccessible for use by the disabled by failing to provide at least one drinking fountain that complies with the ADA Standards for Accessible Design, which means that Ms. Clark cannot take a drink of water at the drinking fountains when she becomes thirsty, whereas non-disabled individuals are able to fully use the drinking fountains;

q) Defendants' policies, practices, and procedures are conducted without regard to disabled individuals;

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else they have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

38. As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendants' existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

39. As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendants have no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at their stores as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of McKenzie Village, Big Lots and Hobby Lobby, as described above in detail.

40. As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

41. To date, the Defendants' discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

42. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendants both create and adopt a corporate practice and policy that Defendants (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendants' facilities consistent with the ADA; (2) Defendants will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center; (3) Defendants will modify their practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

43. As pled above McKenzie Village, LLC "owns" and "leases to" Big Lots and Hobby Lobby the real property and improvements located at 3161 S. McKenzie St., Foley, Alabama 36535 and 3165 S. McKenzie St., Foley, Alabama 36535 and is therefore, pursuant to 42 U.S.C. § 12182, is responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

44. As pled above Big Lots Stores, Inc. "operates" and "leases" the Big Lots store located at 3161 S. McKenzie St., Foley, Alabama 36535, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

45. As pled above Hobby Lobby Stores, Inc. "operates" and "leases" the Hobby Lobby store located at 3165 S. McKenzie St., Foley, Alabama 36535, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

46. The ADA is over twenty-five (25) years old. Defendants know they must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

47. By this Complaint, Plaintiff provides sufficient notice of her demands for an alteration in Defendants' policies, practices, and procedures.

48. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants

pursuant to 42 U.S.C. § 12205.

49. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
*Denial of Full and Equal Enjoyment*
*(All Defendants)*

50. Plaintiff re-alleges paragraphs 1-49 above.

51. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

52. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

53. Congress also found that: *"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and*

*communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); *"the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;"* 42 U.S.C. § 12101(a)(7). Congress even found that: *"the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

54. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

55. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

56. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

57. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and

omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

58. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

59. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure

that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

60. The keystone for this analysis is Defendants *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

61. Plaintiff, Jane Clark, was denied full and equal access to the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center. Plaintiff specifically and definitely wants to return to Big Lots to enjoy the surprises in every aisle that consist of a wide range of everyday consumables, housewares, toys, and seasonal goods at amazing values that other stores cannot match, and Hobby Lobby to enjoy the wide range of affordable arts-and-crafts, hobbies, picture

frames, fabrics, floral and wedding supplies, cards and party ware, baskets, wearable art, home accents, holiday merchandise, and gifts. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendants has failed to provide to Plaintiff as follows: Defendant, McKenzie Village, LLC, failed to provide an accessible parking lot and accessible route to the entrances of the Big Lots and Hobby Lobby stores for disabled individuals, which means Ms. Clark cannot park, cannot independently get out of the car and onto a wheelchair, cannot independently travel into the facilities from a reasonable distance because she is often forced to park on the opposite side of the building, cannot determine if there is a usable parking space, and must determine by trial and error how she is to park and maneuver into the facilities; Defendants failed to provide an accessible route to and throughout the Big Lots and Hobby Lobby stores and shopping aisles for Plaintiff, which means that unlike the non-disabled, Plaintiff is forced to struggle and maneuver in all sorts of ways to move throughout the Big Lots and Hobby Lobby stores and shopping aisles, if she can make it at all; Defendants failed to provide Plaintiff that same experience that non-disabled individuals have when shopping

at the Big Lots and Hobby Lobby stores located at the McKenzie Village Shopping Center; Defendants failed to provide Plaintiff the same experience at their sales/service counters throughout their stores by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiff cannot fully and equally use the sales/service counters to transact business and/or use the services provided at the counters throughout Big Lots and Hobby Lobby in the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business and discuss services with employees at the counters; Defendants failed to provide the same experience by making it nearly impossible for Plaintiff to independently access the point of sale machines at the check-out counters in the Big Lots and Hobby Lobby stores to pay for her purchases, while the non-disabled can independently access the point of sale machines to pay for their purchases; Defendants failed to provide the same experience by mounting the point of sale machines at the check-out counters at an inaccessible height and failing to provide Plaintiff the same level of privacy as non-disabled individuals by forcing Plaintiff to hand her card to the cashier, and then forcing

Plaintiff to tell the cashier her PIN number to complete the transaction, while the non-disabled can independently and privately use the point of sale machines without handing their cards to the cashiers or telling the cashiers their PIN numbers; Defendants failed to provide Plaintiff the same experience at their restrooms by failing to maintain the ADA accessible elements within the restrooms at the Big Lots and Hobby Lobby stores so that Plaintiff is not afforded the opportunity to independently use the restrooms, or clean up, or move into and throughout the restrooms, whereas non-disabled individuals are able to independently use the restrooms at the facilities; Defendants failed to maintain the accessible overhead directional signage of Big Lots and Hobby Lobby so that Plaintiff, unlike the non-disabled, does not even know what route and what facilities are usable by individuals with disabilities; Defendants' failure to identify by signage what is accessible and what is not accessible throughout the Big Lots and Hobby Lobby stores makes Plaintiff inferior, segregated or otherwise treated differently, because unlike the non-disabled, Plaintiff has to guess and speculate and determine by trial and error what facilities she can even use; Defendants failed to provide the same experience by  making it nearly impossible for

Plaintiff to approach their drinking fountains in the Big Lots and Hobby Lobby stores and take a drink of water, while the non-disabled have drinking fountains in the Big Lots and Hobby Lobby stores they can take a drink of water from; Defendant, Hobby Lobby Stores, Inc., fails to provide that same experience by Defendant's current practice of Hobby Lobby employees telling Ms. Clark they do not maintain wheelchairs at the front of the store because they take up too much space and are "eye sores" and if she needs a wheelchair she can go to the back of the store and get one herself; Defendant, Hobby Lobby Stores, Inc., fails to provide that same experience by Defendant's current practice of maintaining a shopping cart within the required clear floor space at the purported accessible check-out counter, which denies Ms. Clark the full and equal use of the counter as the able-bodied, because the able-bodied have counters that are not obstructed by shopping carts, and further upsets Ms. Clark as Hobby Lobby told her they do not keep wheelchairs up front because "they take up too much space and are eye sores", yet they maintain large shopping carts up front and within the clear floor space around the only counter disabled customers do not have to speculate to use; and all the foregoing failures by Defendants inhibited Plaintiff from having the

same experience that non-disabled individuals have when shopping at the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center.

62. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

63. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who

use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

64. Thus, Defendants' "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendants have segregated and separated the disabled from the non-disabled individuals. *"The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

65. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facilities during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center.

66. Defendants' conduct and Defendants' unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiff and others similarly situated unequally.

67. Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible features at Defendants' facilities. 28 C.F.R.§ 36.211(a).

68. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her

reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

69. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

## COUNT FOUR
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12183(a)(1)
### *(Failure to design and construct facility for ADA compliance)*
### *(All Defendants)*

70. Plaintiff re-alleges paragraphs 1 – 69 above.

71. 42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

72. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services,

programs, activities, benefits, jobs, or other opportunities." Id. §

12101(a)(5). In its Preamble to the title III regulation, the Department

of Justice recognized that persons in wheelchairs should have the

same opportunities to enjoy the goods and services and other similar

events of a public accommodation with their families and friends, just

as other non-disabled individuals do. The DOJ further recognized

that providing segregated accommodations and services relegates

persons with disabilities to the status of *second-class citizens*. 28 C.F.R.

pt. 36, App. B, § 36.203.

73. To eliminate such segregation Congress enacted the requirement that

facilities be "readily accessible to and usable by individuals with

disabilities". This very requirement is intended to enable persons with

disabilities *"to get to, enter and use a facility."* H.R. Rep. No. 101-

485(III), at 499-500 (1990). It requires "a high degree of convenient

accessibility," id., as well as access to the same services that are

provided to members of the general public. "For new construction

and alterations, the purpose is *to ensure that the service offered to persons*

*with disabilities is equal to the service offered to others.*" *Id.*

74. As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

75. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

76. Defendant, McKenzie Village, LLC, "owns" and "leases to" Big Lots and Hobby Lobby, and is directly involved in the designing and/or

construction of the shopping center in this litigation for first occupancy after January 1993.

77. Defendant, Big Lots Stores, Inc., "operates" and "leases" the Big Lots store and is directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

78. Defendant, Hobby Lobby Stores, Inc., "operates" and "leases" the Hobby Lobby store and is directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

79. Defendants were and are required to design and construct the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center to be "readily accessible to and usable by individuals with disabilities." Defendants violated the statute by failing to design and construct *its retail shopping center to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendants further violated the statute by failing to design and construct their facilities in compliance with the ADA during planned alterations as described throughout

this Complaint.

80. According to Defendants' own publicly available information, Defendants chose to design and construct their facilities in a way that is not ADA Title III compliant whatsoever. Defendants literally strategically design, construct and maintain their facilities without any regard to the disabled. Defendants' systematic design of their facilities fails to afford disabled individuals the same shopping experience that is afforded to individuals without disabilities.

81. To date, the Defendants' discriminating actions continue.

82. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

83. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, Jane Clark demands judgment against the Defendants on Counts One through Four and requests the following injunctive and declaratory relief:

1.  That the Court declare that the property owned and businesses operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.  That the Court enter an order enjoining the Defendants to alter the facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and their implementing regulations, as stated in Count One;

3.  That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make their business practices consistent with ADA Title III in the future.

4.   That the Court enter an order directing the Defendants to provide Plaintiff full and equal access to the Big Lots and Hobby Lobby shopping experience as stated throughout the Complaint, and to the use of the Big Lots and Hobby Lobby facilities, and further order Defendants to maintain the required accessible features at the facilities so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.   That the Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.   That the Court enjoin Defendants to remediate the Big Lots and Hobby Lobby stores located in the McKenzie Village Shopping Center to the proper level of accessibility required for the design and construction of the facilities for first occupancy, as stated in Count Four;

7.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8. That the Court award such other, further, and different relief as it

deems necessary, just, and proper.


Respectfully Submitted, this the ___13th___ Day of April, 2017.


/s/ *Cassie E. Taylor*

**CASSIE E. TAYLOR**
**BPR # AL-8297N67R**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*


/s/ *Landis Sexton*

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ _____

**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this $\underline{13^{th}}$ day of April, 2017 to the following:

**MCKENZIE VILLAGE, LLC**
c/o Registered Agent
attn.: Philip G Burton
41 West I-65 Service Road N, Suite 450
Mobile, Alabama 36608

**BIG LOTS STORES, INC.**
c/o CSC Lawyers Incorporating SVC Inc.
attn.: Registered Agent
150 South Perry Street
Montgomery, Alabama 36104

**HOBBY LOBBY STORES, INC.**
c/o CSC Lawyers Incorporating SVC Inc.
attn.: Registered Agent
150 South Perry Street
Montgomery, Alabama 36104

/s/ *Cassie E. Taylor*
    **CASSIE E. TAYLOR**
    **BPR # AL-8297N67R**
    ADA Group LLC
    4001 Carmichael Road, Suite 570
    Montgomery, Alabama 36116
    334.356.5314 p
    334.819.4032 f
    CET@ADA-Firm.com
    *Attorney for the Plaintiff*